CANADY, J.,
dissenting.
Because the Florida Constitution in article III, section 16(d), unambiguously precludes challenges under Florida law to a legislative redistricting plan that has been declared valid by this Court in a proceeding under article III, section 16, I would grant the Legislature’s request for relief under this Court’s authority-granted by article V, section 3(b)(7) of the Florida Constitution-to issue all writs necessary to the complete exercise of its jurisdiction. I strongly disagree with the majority’s decision, which consigns section 16(d) to the status of a dead letter. Accordingly, I dissent.
Article III, section 16(d), provides that “[a] judgment of the supreme court of the state determining [a legislative redistricting plan] to be valid shall be binding upon all the citizens of the state.” (Emphasis added.) The majority totally fails to reckon with the text of this constitutional provision. Rather than addressing this unambiguous text, the majority relies on dicta from prior opinions that also failed to reck *215 on with the constitutional text. In the reasoning set forth by the majority, what this Court has said in dicta without any consideration of the pertinent constitutional text effectively trumps what the people themselves have said in the Constitution they have adopted. The constitutional order is thus inverted.
Until the majority’s decision here, this Court has never held — as distinct from stating in dicta — that the Constitution permits a challenge under Florida law to the validity of a redistricting plan after the plan has been declared valid in a proceeding under article III, section 16. What the Court has said in dicta on that subject is fundamentally flawed because it does not address the rule of preclusion in the text of article III, section 16(d). Beginning with the Court’s first decision under the framework established by article III, section 16, the Court has never once discussed the significance of section 16(d). The provision has been consistently — if not studiously — ignored by this Court.
The constitutional pronouncement in section 16(d) concerning the binding effect of the declaratory judgment of validity issued in a proceeding under article III, section 16, is unconditional and unequivocal. It is plainly designed to conclusively determine and settle once for all the validity of a redistricting plan under state law. The plain import of the provision that a judgment of validity “shall be binding upon all the citizens of the state” is that no citizen is permitted to thereafter challenge the validity of the redistricting plan that has been held valid. If the citizens of the state are bound by a judgment of validity, they are necessarily precluded from ehal-lenging the validity of the redistricting plan in subsequent litigation. Those who are bound by a judgment will not be heard to challenge that judgment. Nothing in the constitutional text or structure suggests that the rule of preclusion in section 16(d) is limited to claims that are actually litigated in a section 16 validation proceeding. If section 16(d) had been designed to have such limited preclusive effect, the Constitution would contain some sign of that limitation. Although the Court has repeatedly suggested in dicta that post-validation challenges to redistricting plans are permissible, it has never found occasion to explain why section 16(d) does not mean what it says.[4]
The references in the redistricting context to the facial/as-applied challenge dichotomy — on which the majority here relies — find their source in the 1972 decision In re Apportionment Law Appearing as Senate Joint Resolution No. 1305, 1972 Regular Session (In re Apportionment Law—1972), 268 So.2d 797, 808 (Fla.1972), where the Court in dicta observed that “the apportionment plan as framed may be constitutional on its face, but upon its application in a particular case the joint resolution may violate organic law,” relying on prior “holdings that a statute may be valid as applied to one state of facts, though invalid as applied to another state of facts.” In discussing fact-intensive claims that could properly be adjudicated under the federal Voting Rights Act of 1965, 42 U.S.C. §§ 1971, 1978 to 1973bb-4 (1970), the Court went on to state that the “Florida Constitution contemplates that our judgment in these proceedings be limited to a declaration that the apportionment plan on its face is either valid or invalid *216 under the Constitution of the United States and the Constitution of the State of Florida” and that its judgment of validity was “without prejudice to the right of protesters to question the validity of the plan in appropriate proceedings raising factual questions asserted in their briefs.” Id. The litigation of federal claims, of course, cannot be limited by Florida law. But there is nothing in the text of the Florida Constitution suggesting that as-applied challenges arising under Florida law somehow escape the rule in section 16(d) that all the citizens of the state are bound by a judgment declaring a redistricting plan valid. And in stating its view concerning as-applied challenges, the Court maintained a stony silence regarding section 16(d).
The Court’s deliverances on the subject of post-validation challenges to redistricting plans are also rooted in a misconception of the law regarding declaratory judgments. In its 1972 “Order Clarifying Opinion and Denying Rehearing,” in what could only be described as a supplemental advisory opinion, the Court expressed the view that a post-validation challenge could be brought “by supplemental relief’ as authorized by the declaratory judgment law in section 86.061, Florida Statutes (1971). In re Apportionment Law—1972, 263 So.2d at 822 (Order Clarifying Opinion and Denying Rehearing). The Court reasoned that “[b]y classifying the [article III, section 16] proceeding as one for ‘declaratory judgment,’ the Florida Constitution contemplates that we retain exclusive state jurisdiction and consider any and all future proceeding relating to the validity of the apportionment plan.” Id. The majority here, of course, does not follow the dicta regarding the retention of exclusive jurisdiction but does otherwise rely on the 1972 Court’s view concerning post-validation challenges.
The 1972 Court’s muddled reasoning regarding the law of declaratory judgments demonstrates the fallacious foundation on which the majority’s position ultimately rests. The Court’s misconception of the law regarding declaratory judgments is twofold. First, there is no basis for concluding that the provisions of chapter 86, Florida Statutes, are applicable under article III, section 16. Second, even if chapter 86 did have some application in this context, the supplemental relief authorized by section 86.061 does not encompass the setting aside of a prior declaratory judgment.
The proceeding established by article III, section 16, is a unique constitutional proceeding. There is no suggestion in the Florida Constitution that this proceeding, which takes place in the Supreme Court, is somehow subject to the provisions of chapter 86. As section 86.011, Florida Statutes (1971), makes clear, the declaratory judgment proceedings dealt with by chapter 86 are proceedings over which “[t]he circuit courts have jurisdiction.” Article III, section 16, proceedings do not fit within that framework.
But even putting aside this problem, the suggestion that the provision for supplemental relief in section 86.061 authorizes litigation to set aside a prior declaratory judgment is entirely fallacious. The crucial provision of section 86.061 is this: “Further relief based on a declaratory judgment may be granted when necessary or proper.” (Emphasis added.) An application for relief that seeks to set aside the prior declaratory judgment is not an application for relief based on a declaratory judgment. Further relief is based on the prior declaratory judgment only if it seeks to give effect to that judgment — not if it seeks to wholly or partially invalidate that judgment. When “further relief’ is sought, the existing declaratory judgment can serve “as a predicate to further relief.” *217 Powell v. McCormack, 395 U.S. 486, 499, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). A declaratory judgment is not properly the “predicate” for its own undoing. See also Horn & Hardart Co. v. Nat’l Rail Passenger Corp., 843 F.2d 546, 548 (D.C.Cir.1988) (“The ‘further relief provisions of both state and federal declaratory judgment statutes clearly anticipate ancillary or subsequent coercion to make an original declaratory judgment effective.”); McCann v. Kerner, 436 F.2d 1342, 1344 (7th Cir.1971) (stating that further relief provision of federal declaratory judgment act “contemplates that subsequent to the issuance of a declaratory judgment, a court may upon notice and hearing grant injunctive relief to protect and enforce its judgment”); Koscot Interplanetary, Inc. v. State, 230 So.2d 24, 25 (Fla. 4th DCA 1970) (stating that supplemental relief on a declaratory decree is “that which is necessary to make effective the judgment”).
The majority’s reasoning in rejecting the Legislature’s argument that section 16(d) precludes the challenge brought by the respondents is summed up in the assertion that the Legislature’s argument should be rejected because “this Court’s apportionment decisions have always contemplated the potential of subsequent challenges to the validity of the legislative apportionment plan” and the further assertion that when article III, section 21 of the Florida Constitution “was proposed and passed, the framers and voters were entitled to rely on this Court’s precedent and our consistent interpretation of the declaratory judgment required by article III, section 16, as a determination of only the facial validity of the plan.” Majority op. at 209, 210. It is true that the Court has never interpreted or applied section 16(d) in the manner suggested by the Legislature. That is because the Court has never considered section 16(d) at all. And for that very reason, it is necessarily false that the Court’s precedent contains any holding that section 16(d) permits so-called as-applied post-validation challenges to redistricting plans. The majority’s reference to “this Court’s interpretations dating back to 1972 as to the meaning of article III, section 16(c)-(d),” is fictitious. Majority op. at 210. The Court has uttered not one word about the “meaning” of section 16(d). Since the jurisprudence of this Court contains no discussion of section 16(d), the majority here has necessarily failed to cite any such discussion in our case law.
The majority thus effectively contends that when article III, section 21, was proposed and passed, the framers and the voters were entitled to rely on the dicta contained in our prior opinions. This is an extraordinary position. No one is entitled to rely on dicta. Dicta has only whatever force the persuasiveness of its reasoning can subsequently command. It is indeed a startling proposition that anyone can for any purpose rely on a court’s unreasoned dicta that flies in the face of an unambiguous constitutional provision. The majority’s line of reasoning amounts to this: because the Court has ignored section 16(d) and the people in adopting section 21 were entitled — indeed, bound — to understand that we would continue to ignore section 16(d), the Court therefore will continue to ignore section 16(d). Such reasoning is not sound. A provision of the Florida Constitution is not repealed simply because this Court has — either through inattention or willfulness — ignored the provision. Nor does an argument made last year by the Senate based on dicta in prior decisions — an argument unequivocally rejected by the Court — act to repeal a provision of the Florida Constitution. The words of the text of section 16(d) were adopted by the people of Florida. The people are entitled to rely on what they have said in their Constitution, just as this *218 Court is bound by what the people have said in the Constitution. And the people have neither expressly nor implicitly repealed the rule contained in section 16(d). It should not be treated as a dead letter.
I do not contest the proposition that since 1972 the Court has repeatedly said things that support the majority’s position. Nor do I contest the proposition that the constitutional validation proceeding established by article III, section 16, is not suited to the adjudication of facts in the consideration of fact-intensive claims. But those propositions are not sufficient to establish that the unconditional and unequivocal rule of preclusion in the text of section 16(d) does not bar the lawsuit brought by the respondents. The rule of preclusion in section 16(d) could not be stated more clearly. It is a crucial element of the process established by section 16. Whatever the limitations and restrictions of that process may be, section 16 sets forth the process established by the people of Florida to adjudicate the validity under Florida law of legislative redistricting plans. The voters who adopted section 21 did nothing to in any way restrict the reach of the rule of preclusion in section 16(d). The majority’s analysis in this case begins and ends with the assumption that there must be a way to adjudicate every fact-based claim that might be asserted against the validity of a legislative redistricting plan. That is an assumption that simply cannot be reconciled with the rule of preclusion in section 16(d).
Last year, the majority cast aside the limitation on this Court’s power imposed by our well-established precedent that legislative redistricting plans adopted by the Legislature enjoy a presumption of validity. Now the majority casts aside the limitation on judicial power imposed by section 16(d). With this decision, we confront the prospect of unending litigation concerning legislative redistricting — a prospect that section 16(d), by its plain terms, undeniably was designed to preclude. This unjustified decision further lays the groundwork for the unrestrained judicial “intrusion into a process that is the very foundation of democratic decisionmaking.” Vieth v. Jubelirer, 541 U.S. 267, 291, 124 S.Ct. 1769, 158 L.Ed.2d 546 (2004) (plurality opinion).
In accordance with the provision of section 16(d) that a declaratory judgment of this Court declaring a redistricting plan valid “shall be binding upon all the citizens of the state,” the Legislature is entitled to the issuance of a writ precluding litigation challenging the redistricting plan that this Court last year determined to be valid. I strongly dissent from the majority’s failure to grant this relief to which the Legislature is entitled.
POLSTON, C.J., concurs.

. Why the Court has never felt the need to explain its view regarding the interpretation of section 16(d) cannot be known. Perhaps the Court’s statements that fly in the face of section 16(d) have been based on an intuition that section 16(d) could not possibly mean what it says. And perhaps the Court’s silence regarding the text of section 16(d) has sprung from a bafflement about how to explain that intuition.